OPINION
{¶ 1} Appellant Nicolozakes Trucking Construction, Inc. ("NTC") appeals the decision of the Muskingum County Court of Common Pleas that found in favor of State Farm Mutual Automobile Insurance Company ("State Farm") and ordered Travelers Property Casualty ("Travelers") to reimburse State Farm in the amount of $100,000 and pay an additional $700,000 to the family of the decedent John G. Nester, Jr. The following facts give rise to this appeal.
{¶ 2} On December 3, 1998, Paul and Jessie Gill, partners in a trucking business known as Gill Trucking, purchased a 1987 Mack tractor and a 1985 East trailer from MC Transport. Kenny Marsh and Jeff Crum owned MC Transport. At the time of the purchase, Paul Gill and his son-in-law inspected the tractor-trailer and were satisfied with its condition. Approximately eight months prior to the Gills' purchase of the tractor-trailer, MC Transport conducted an annual inspection on the tractor. The inspection report indicated no problems with the brakes.
{¶ 3} Following their purchase of the tractor-trailer, the Gills entered into an Equipment Lease Agreement and leased the tractor-trailer to NTC. The lease agreement contained the following provisions concerning control and responsibility of the tractor-trailer:
 {¶ 4} 2. Responsibility. INDEPENDENT CONTRACTOR leases EQUIPMENT unto CARRIER for CARRIER'S use, but only to the extent necessary to comply with applicable state and federal law. INDEPENDENT CONTRACTOR agrees to furnish to CARRIER a complete transportation service from origin to destination that is accepted by INDEPENDENT CONTRACTOR. * * *
* * *
 {¶ 5} 8. Operator of Equipment. Subject to CARRIER'S obligation to comply with federal, state or provincial regulations, drivers, helpers, or other employees engaged by INDEPENDENT CONTRACTOR in the performance of INDEPENDENT CONTRACTOR'S obligations under this agreement shall be solely under the control and direction of INDEPENDENT CONTRACTOR, and CARRIER shall have no right to direct or control the hiring, discharge of such employees or the manner or means of performing duties for INDEPENDENT CONTRACTOR, nor shall CARRIER have any responsibility for their compensation, taxes, reports, and obligations relating to their employment with INDEPENDENT CONTRACTOR * * *.
* * *
 {¶ 6} 13. Inspection of EQUIPMENT. INDEPENDENT CONTRACTOR warrants that EQUIPMENT is complete with all required accessories and is in good, safe, and efficient operating condition and shall be so maintained at INDEPENDENT CONTRACTOR'S expense through the duration of this lease. * * *
* * *
 {¶ 7} 15. Costs of Operation. INDEPENDENT CONTRACTOR shall pay all costs of operation of EQUIPMENT including, but not limited to: * * * maintenance costs, lubricants, tires, including changing and/or repair, batteries and other accessories, wages and remuneration of operators, drivers, and helpers, public liability and property damages insurance, payments for injury or damage to operator, driver and helpers and to EQUIPMENT, whether the same occur while the EQUIPMENT is being operated in the services of CARRIER or otherwise, worker's compensation, unemployment insurance, social security or other similar taxes, insurance or benefits on operators, drivers, or helpers * * *.
* * *
 {¶ 8} 16. INDEPENDENT CONTRACTOR will not, for any purpose, whatsoever, act or propose to act as an agent, representative, or employee of CARRIER.
{¶ 9} Throughout the duration of the lease, possession of the tractor-trailer remained with the Gills and their driver, Gregory Yerian. Pursuant to the lease agreement, the Gills purchased full coverage insurance, for the tractor-trailer, from State Farm. NTC also had insurance on the tractor-trailer through Travelers.
{¶ 10} One or two weeks prior to the accident, Yerian informed the Gills that the tractor-trailer had brake problems. According to Yerian, the brakes felt "spongy." NTC was not notified of the brake problem. Paul Gill authorized Yerian to take the tractor-trailer to Haga Sons to have the brakes repaired and Yerian did so on February 18, 1999. Yerian told Jeffrey Haga, Sr. that a shoe fell apart on one of the brakes on the trailer. Yerian did not ask Haga to perform any brake work on the tractor. Haga replaced a couple tires on the tractor and Yerian drove it home and left the trailer, at Haga Sons, so the brake work could be completed.
{¶ 11} On February 24, 1999, the date of the accident, Yerian was hauling coal between St. Clairesville and the AEP generating plant in Conesville. On his third run of the day, as Yerian descended a hill he downshifted into seventh gear. Yerian tapped the brakes at the top of the hill and they worked. However, half way down the hill when he applied the brakes they allegedly did not work and the tractor-trailer began gaining speed. When Yerian applied the brakes just before the accident they allegedly felt "spongy." The trailer jerked and the tractor-trailer rolled over onto its side, went left of center and struck John Nester, Jr.'s tractor-trailer killing him.
{¶ 12} Following Nester's death, Nester's estate filed a wrongful death action. State Farm filed a separate lawsuit pertaining to the coverage issue. The trial court consolidated the two lawsuits. Prior to the commencement of a bench trial on October 1, 2001, Nester's estate settled the wrongful death claim and Travelers and State Farm each advanced the estate $100,000. On November 30, 2001, the trial court issued findings of fact and conclusions of law in which it ordered Travelers to reimburse State Farm in the amount of $100,000, for its advance to the Nester family, and pay the additional $700,000 to the Nester family.
{¶ 13} NTC timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 14} "I. THE TRIAL COURT ERRED BY FAILING TO FIND THAT BRAKE FAILURE WAS THE SOLE CAUSE OF THE ACCIDENT, OR, IN THE ALTERNATIVE, A CONTRIBUTING CAUSE OF THE ACCIDENT (FINDINGS OF FACT AND CONCLUSIONS OF LAW AT P. 3)."
 {¶ 15} "II. THE TRIAL COURT ERRED BY FINDING THAT NICOLOZAKES TRUCKING CONSTRUCTION, INC. HAD A DUTY TO INSPECT THE TRACTOR-TRAILER UNDER THE P.U.C.O. REGULATIONS (FINDINGS OF FACT AND CONCLUSIONS OF LAW AT P. 2)."
 {¶ 16} "III. THE TRIAL COURT ERRED BY FINDING THAT NO INDEMNIFICATION OR CONTRIBUTION IS PROPER FOR NICOLOZAKES TRUCKING CONSTRUCTION, INC. (FINDINGS OF FACT AND CONCLUSIONS OF LAW AT P. 3)."
 {¶ 17} "IV. THE TRIAL COURT ERRED BY FAILING TO EXCLUDE THE TESTIMONY OF DALE K. DENT (FINDINGS OF FACT AND CONCLUSIONS OF LAW IN TOTO)."
 I
{¶ 18} In its first assignment of error, NTC maintains the trial court's finding that the cause of the accident was a combination of unsafe speed, operating in too high a gear and failure to apply the brakes in time was against the manifest weight of the evidence. We disagree.
{¶ 19} When a party asserts that the evidence is against the manifest weight of the evidence, an appellate court conducts the same manifest weight analysis in both criminal and civil cases. Ray v.Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897 and 97CA006907. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Pursuant to State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, a reviewing court is permitted to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence. However, such consideration is not unbounded.
{¶ 20} In State v. Lawson, (Aug. 22, 1997), Montgomery App. No. 16288, at 4, the court explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges:
 {¶ 21} "Because the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in Thompkins, * * * we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence-in short, how persuasive it is."
{¶ 22} It is based upon this standard that we review NTC's first assignment of error. NTC maintains the manifest weight of the evidence demonstrated that the accident was caused solely by brake failure. In support of this argument, NTC refers to the following evidence presented at trial. Gregory Yerian testified that he had been driving the tractor-trailer for approximately ten weeks and had been on this particular route approximately one hundred to one hundred fifty times prior to the accident. Tr. at 43-44. Yerian had never experienced any problems driving down the hill where the accident occurred, never had any near misses where he was going too fast and started to lose control and never went over the center line because he was going too fast. Tr. at 45.
{¶ 23} Yerian also testified that he believed seventh gear was a safe gear to use before descending the hill because he used it at least one hundred times before going down the same hill without any problems. Tr. at 47. Yerian stated he was not going any faster than normal. Tr. at 78. Yerian applied the brakes at the top of the hill and they worked. Tr. at 57. When he was half way down the hill he applied the brakes again and they did not work and he began to gain speed. Tr. at 58-59. Yerian applied the brakes again right before the accident and they felt "spongy." Tr. at 71.
{¶ 24} NTC claims Yerian's testimony was buttressed by the expert testimony of Robert Reed and Jack Holland. Mr. Reed performed a complete inspection of the tractor-trailer's braking system and identified the following problems: left front brake air line was defective; emergency/parking brake on the left rear brake on the tractor was rusted through and possibly contaminated, thereby causing a leak in the air system; and several of the airlines on the tractor-trailer were unapproved. Tr. at 217, 232. Mr. Reed concluded the tractor-trailer experienced catastrophic brake failure due to the air system malfunctioning as a result of the foregoing problems. Tr. at 234.
{¶ 25} NTC claims Mr. Reed's conclusions were corroborated by Mr. Jack Patrick Holland, who was the principal accident reconstructionist for the Ohio State Highway Patrol from 1967 through 1991. Mr. Holland inspected the tractor-trailer, visited the crash site and reviewed the Ohio State Highway patrol report. Based upon this information, Mr. Holland concluded the cause of the accident was sudden, unexpected brake failure. Tr. at 148-149.
{¶ 26} In further support of its argument that brake failure caused the accident, NTC refers to the fact that the Ohio State Highway Patrol report indicates problems with the right rear tandem brake on the tractor, left rear tandem brake on the tractor and the left front tire brake on the tractor. NTC also refers to the testimony of appellees' expert, Dale K. Dent. When asked whether the condition of the brake system was a contributing factor in the accident, Mr. Dent responded that, "In my opinion, the braking or the efficiency of the braking system, overall efficiency, would have been reduced." Tr. at 318. Mr. Dent also conceded there were some defects in the vehicle and in the braking system. Tr. at 304.
{¶ 27} NTC argues the manifest weight of the evidence demonstrates that the sole cause of the accident was brake failure. However, in the alternative, NTC maintains the evidence absolutely demonstrates that brake failure was a contributing cause of the accident. We have reviewed the testimony of Mr. Reed, Mr. Holland, Mr. Dent and the Ohio State Highway Patrol report and conclude the trial court's finding that the "* * * cause of the accident was a combination of unsafe speed, operating in too high a gear precluding downshifting and a failure to apply the brakes until the vehicle was well into the curve which could not be negotiated * * *" is not against the manifest weight of the evidence.
{¶ 28} The report of the Ohio State Highway Patrol, which was stipulated into evidence by the parties, indicates the cause of the accident was unsafe speed for the conditions. The report does not indicate equipment failure as a causative factor contributing to the accident, even though the report does mention some mechanical problems with the tractor-trailer. Tr. at 157-158. Instead, the report indicates speed unsafe for the conditions as the causative factor of the accident. Tr. at 158. Further, both Mr. Holland and Mr. Reed admitted that if the Ohio State Highway Patrol correctly observed skid marks at the accident scene, both of their opinions would be incorrect in concluding that brake failure caused the accident.
{¶ 29} Finally, although Mr. Dent conceded that the efficiency of the tractor-trailer's braking system was reduced, he did not state that the reduced efficiency of the braking system was the sole cause of the accident. Instead, the evidence supports the conclusion that had Yerian used a lower gear, traveled at a lower rate of speed and utilized the brakes sooner, he would have been able to avoid the accident. Accordingly, the trial court's judgment is not against the manifest weight of the evidence.
{¶ 30} NTC's first assignment of error is overruled.
 II
{¶ 31} In its second assignment of error, NTC claims the trial court erred in concluding, in Findings of Fact number seven, that it had a duty to inspect the tractor-trailer under the Ohio Public Utilities Commission ("P.U.C.O."). We disagree.
{¶ 32} In finding that NTC had a duty to inspect, the trial court did not cite to a specific P.U.C.O. regulation. However, NTC refers to subsection (B) of O.A.C. 4901:2-3-03[1], which provides, "[t]he authorized carrier shall, before taking possession of the lease equipment, have the same inspected by an employee authorized and certified to be capable by the owner, partner or an executive officer, in order to ensure that said equipment complies with the safety standards in rule 4901:2-5-02 of the Administrative Code if applicable." NTC contends this section does not apply to it because the tractor-trailer at issue was a dump trailer operated exclusively in the transportation of bulk commodities.
{¶ 33} O.A.C. Section 4901:2-3-03(E)(5) provides:
{¶ 34} "Except for the limited applicability of rule 4901:2-3-07
(pertaining to insurance), the provisions of Chapter 4901:2-3 shall not apply:
* * *
 {¶ 35} "(5) To equipment operated exclusively in the transportation of loose, bulk commodities such as are normally transported in dump trucks and are unloaded by dumping."
{¶ 36} Testimony, at trial, established that the trailer was a dump trailer used to haul various types of bulk commodities. Tr. at 100, 104-105.
{¶ 37} NTC further maintains that even if we were to find that it had a duty to inspect the tractor-trailer, it did so on April 10, 1998, approximately ten months prior to the accident while the tractor-trailer was still owned by MC Transport. No defects in the brakes were detected during this inspection. Tr. at 173.
{¶ 38} Pursuant to the Ohio Administrative Code, the trial court did not err when it concluded NTC had a right and a duty to inspect. O.A.C. Section 4901:2-3-03(A)(3) imposes this duty and provides, in pertinent part:
 {¶ 39} "(3) Shall provide for the exclusive possession, control and use of the equipment during the full period of the lease, and for the complete assumption on the part of the lessee of full responsibility in respect of said equipment during the period of the lease to the public, the shipper, and the public utilities commission of Ohio, * * *."
{¶ 40} NTC claims the above section of the Ohio Administrative Code does not apply to it because the truck involved in the accident was a truck that hauled bulk commodities and the commodities were unloaded by dumping. See O.A.C. 4901:2-3-03(E)(5). There is no evidence, contained in the record, that the normal mode of hauling coal is by dump truck. Although the trailer involved in the accident unloaded the coal by dumping, all parties refer to the vehicle in question as a tractor-trailer and not a dump truck. Accordingly, we conclude NTC had full responsibility with respect to the brakes on the tractor-trailer.
{¶ 41} Further, the lease agreement gave NTC the right to inspect the tractor-trailer at the time it took possession and also gave it the right to inspect periodically thereafter. Thus, the lease agreement provided NTC with the right to perform the inspections needed to comply with its duty under the Ohio Administrative Code.
{¶ 42} NTC maintains it did conduct an inspection on the tractor-trailer when MC Transport owned it, which was approximately ten months prior to the accident. However, under the lease agreement, NTC also had the ability to inspect it at the time it took possession from Appellee Paul and Jessie Gill, which it did not do. Nor does the record indicate that NTC ever inspected the tractor-trailer after Paul and Jessie Gill leased it to NTC.
{¶ 43} We conclude the trial court did not err when it determined, in Findings of Fact number seven, that NTC had a right to inspect under the lease and a duty to do so under P.U.C.O. regulations. Although we have addressed the issue of NTC's duty to inspect the tractor-trailer, we would note that having determined in the first assignment of error that the accident was the result of the negligence of the driver, the issue of NTC's duty to inspect is moot.
{¶ 44} NTC's second assignment of error is overruled.
 III
{¶ 45} In its third assignment of error, NTC contends the trial court erred when it determined it was not entitled to indemnification or contribution. We disagree.
{¶ 46} The trial court concluded, in its Findings of Fact and Conclusions of Law, that since the Travelers policy covered the entire wrongful death settlement amount and insured all the parties, it was responsible for the judgment and no indemnification or contribution would be proper for NTC or Travelers. See Conclusions of Law number nine. We agree with the trial court's conclusion, but do so for a different reason.
{¶ 47} In Ohio, R.C. 2307.34 governs insurer contribution and motor carrier liability as to leased motor vehicles. NTC maintains this statute does not apply to the case sub judice because it only applies to the rights of insurance companies, only applies to trucks engaged in "nontrucking activity" at the time of the accident and does not apply to equipment operated for the transportation of bulk commodities. We find these arguments lack merit and conclude the statute is applicable to the facts of this case.
{¶ 48} R.C. 2307.34(B) specifically provides that "[a] cause of action for contribution in favor of a primary insurer [Travelers] against a secondary insurer [State Farm] exists if all of the following apply:
 {¶ 49} "(1) The primary insurer issues a policy of motor vehicle liability insurance to a motor carrier to pay any final judgment recovered against the motor carrier for the death of any person or an injury to or loss to person or property of any person resulting from the negligent operation, maintenance, or use of motor vehicles displaying the identification placards of the motor carrier, as required by the interstate commerce commission or the public utilities commission;"
 {¶ 50} "(2) The motor carrier enters into a lease agreement with the owner of a motor vehicle not owned by the motor carrier, that provides that an operator not employed by the motor carrier will, during the duration of the lease, operate the motor vehicle in service to the motor carrier and will display on the motor vehicle the required identification placards;"
 {¶ 51} "(3) Due to the negligent operation by the operator of the leased motor vehicle an accident involving the leased motor vehicle occurs while the operator is engaged in a nontrucking activity, resulting in the death of any person or in an injury to or loss to person or property of any person, and the operator is not an employee of the motor carrier;"
 {¶ 52} "(4) The primary insurer pays a final judgment to compensate a party for the death of any person as the result of the accident or for an injury or loss to person or property of the party as the result of the accident;"
 {¶ 53} "(5) At the time of the accident, a secondary insurer had issued to the owner of the motor vehicle a policy of motor vehicle liability insurance to pay any final judgment recovered against the owner for the death of any person or an injury to or loss to person or property of any person resulting from the negligent operation, maintenance, or use of the motor vehicle while it is being operated during a nontrucking activity."
{¶ 54} Pursuant to the above statute, NTC does not have a cause of action for contribution against Appellees Gills. First, at the time of the accident, NTC was not displaying the proper identification placards. Tr. at 185. Second, the accident did not occur while Yerian was involved in a "nontrucking activity." R.C. 2307.34(A)(2) defines a "nontrucking activity" as follows:
 {¶ 55} "(a) Any operation of the leased motor vehicle that is not for the benefit of the lessee;"
 {¶ 56} "(b) Any operation of the leased motor vehicle by anyone other than an operator who previously has been qualified and authorized by the lessee or authorized agents of the lessee to operate the vehicle;"
 {¶ 57} "(c) Any operation of the leased motor vehicle for the purpose of conducting any personal or business affairs of the vehicle owner or his agents or employees, if the operation results in a diversion of the vehicle, while transporting property for the lessee, from its normal or reasonable route between its point of origin and point of destination and all scheduled pick-up or delivery stops en route thereto;"
 {¶ 58} "(d) Any operation of the leased vehicle by any person to transport property without the prior knowledge and consent of the lessee."
{¶ 59} The evidence at trial established that at the time of the accident, Yerian had authority to operate the tractor-trailer for NTC and was doing so for the benefit of NTC. Thus, Yerian was not involved in a "nontrucking activity." Accordingly, due to the lack of proper identification placards and the fact that Yerian was operating the tractor-trailer, on behalf of NTC, in a trucking activity, NTC may not maintain a cause of action for contribution.
{¶ 60} Further, having determined in the first assignment of error that the Gills' negligence did not contribute to the accident, NTC is precluded from seeking indemnification or contribution.
{¶ 61} NTC's third assignment of error is overruled.
 IV
{¶ 62} In its final assignment of error, NTC maintains the trial court erred when it failed to exclude the testimony of Dale K. Dent. We disagree.
{¶ 63} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It is based upon this standard that we review NTC's fourth assignment of error.
{¶ 64} It is well settled that an expert testifying on the issue of proximate cause must state an opinion with respect to the causative event in terms of probability. Stinson v. England, 69 Ohio St.3d 451,1994-Ohio-35, paragraph one of the syllabus. An expert is not required to recite any particular "magic words," but his or her testimony, when considered in its entirety, must be equivalent to an expression of probability. Hampton v. Eckhart (Nov. 19, 1991), Montgomery App. No. 11976, at 3.
{¶ 65} We have reviewed the testimony of Mr. Dent and conclude that it was admissible as it provides evidence of more than mere possibility or speculation. Mr. Dent clearly disagreed with the conclusion of appellees' experts that the accident was the result of catastrophic brake failure. Tr. at 291. Instead, Mr. Dent agreed with the report of the Ohio State Highway Patrol. Tr. at 291-292. Even if we were to disregard Mr. Dent's testimony about how the accident occurred, appellees stipulated to the report of the Ohio State Highway Patrol, which explains the same reason for the accident as Mr. Dent's testimony. Further, this was a trial to the bench where the admission of improper evidence is considerably less damaging since the trial court is presumed to disregard inadmissible evidence.
{¶ 66} NTC's fourth assignment of error is overruled.
{¶ 67} For the foregoing reasons, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.
By: WISE, J. HOFFMAN, P.J., and GWIN, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.
Costs assessed to Defendant-Appellant Nicolozakes Trucking Company.
[1] We note that the sections of the Ohio Administrative Code relied upon by appellees have been repealed effective April 20, 2001. However, these sections were in effect prior to the date of the accident and on the date of the accident.